**MULTIPLE USE, INC., Appellant,**

v.

**Rogers C. B. MORTON, Secretary of the Interior, Appellee.**

**No. 73-1218.**

United States Court of Appeals,
Ninth Circuit.

Oct. 2, 1974.

Hale C. Tognoni (argued), Phoenix, Ariz., for appellant.

Jacques B. Gelin (argued), U. S. Dept. of Justice, Washington, D. C., for appellee.

## OPINION

Before BARNES and KOELSCH, Circuit Judges, and FIRTH,* District Judge.

BARNES, Senior Circuit Judge:

This is an appeal from a judgment rendered by the District Court on cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The subject of this litigation is a mineral patent application (No. Ar. 034305) concerning the so-called Robe-Roy, Martin-Missing Link placer mining claims (originally filed in 1896 (on 20 acres), in 1915 (on 20 acres), and in 1933 (on 40 acres), respectively).

One of the earlier claimants, by obtaining quit-claim deeds from some locators and instituting quiet title actions against others, claimed by an *amended* location notice filed on July 15, 1962, with the *deletion* of overlapping locations, an area of between 103.18 (or 130.18) and 160 acres.

---

* Honorable Robert Firth, United States District Judge, Central District of California, sitting by designation.

While in earlier days (prior to 1896) much placer gold had been removed from the Lynx Creek area *near* the claims here described, there was no placer gold located, save in miniscule amounts, from 1896 to March, 1960.

On March 25, 1960, the Secretary of the Interior (in Contest Ar. 10388), charged that a valid discovery of minerals sufficient to support a mining location did not exist within appellant's claim. In processing such action, on January 9, 1962, the claims were examined by mining engineers for the Government, and a report made to all parties to the contest on February 9, 1962, suggesting that "further prospecting on the claims is justified" (Record, 24).[1] Based upon this engineer's report, the Government moved to dismiss *without prejudice* its complaint to permit further search for the discovery of mineralization on the claim. This dismissal was granted February 15, 1962.

The government subsequently filed a complaint dated February 1, 1966 (and brought on for hearing on December 12, and 13, 1966), Contest No. Ar. 034305, entitled "United States of America v. Silverton Mining & Milling Company, Inc."—the then alleged owner of the claim—IBLA 70–22 (1970), charging *first*, that "a valid discovery of minerals as required by the laws of the United States does not exist within the placer mining claims"; and *second*, "that the lands embraced within the limits of the Robe-Roy, Martin-Missing Link mining claims is (sic) non-mineral in character within the meaning of the mining laws." [2]

The Hearing Examiner's decision appears in Record, 88 to 99, inclusive. The mining claim was declared null and

void, based on the Examiner's Final Conclusion.[3]

This final conclusion was based on the following reasoning:

(1) The minerals in the claim are gold, sand, stone and gravel. The gold is recovered by dredging. The stones are picked up by hand and loaded on a truck. Sand and gravel are recovered through use of a mechanical loader. Contestee (here appellant) contends that in a combined operation, all deposits constitute a valuable economic unit. But, because each of these materials is recovered by a different method—that is, no one of them is a by-product of the other—it was concluded the materials must be considered separately.

(2) Common varieties of sand, stone and gravel must have been discovered prior to the Act of July 23, 1955, 30 U. S.C. § 611 to be subject to location. Barrows v. Hickel, 447 F.2d 80 (9th Cir. 1971).

There was no evidence that the sand and gravel were used *in quantity* prior to July 23, 1955, hence they are not locatable deposits. The stone "and similar deposits are along the creek bed for miles and appear as common as drops of water in San Francisco Bay." (Record, 92).

The Examiner first noted that the appellant contestee, in 1960 during the resistance to the government's claim of non-discovery, raised but one issue: whether there had been discovery of a valuable mineral deposit, to wit: gold.

The Examiner then held the government, through its expert testimony, had established a *prima facie* case. He then heard witnesses O'Dell, Tognoni and others, and saw the written reports of experts Haley, Bradley and McCarthy, and

1. "Record" refers to "Official Report of Proceedings Before the United States Department of Interior, Bureau of Land Management."

2. Other issues were raised by the government as to the size of the claim. The outcome of the contest as to the validity of the claims rendered the issues as to size moot.

3. "From all the evidence at the hearing, I conclude that the gold values remaining in the placer material no longer constitute a valuable mineral deposit, and that the stone on the claim was not valuable at the time the stone was excluded from location under the mining laws." (C.T. at 98).

considered affidavits from various witnesses.

Mr. Tognoni's conclusion was that the claim had a combination of deposits "which make an economic unit." (Record, 95–96).

The Hearing Examiner, using the "prudent man test," [4] and "its complement and refinement" [5] the "marketability test" [6] as is required of him (and of us), compared the conflicting testimony of the government's witnesses and those of the contestee-appellant, held that the contestee's evidence "falls far short of establishing that there is a sufficient gold deposit to induce a prudent man to expend further time and effort on the development of the deposit with a reasonable prospect of success" (Record, 98), and that the gold values remaining in the placer material within the claim no longer constituted a valuable mineral deposit.

The Hearing Examiner's decision was appealable, and an appeal was taken to the Bureau of Land Management where it was affirmed, and then taken to the three member Board of Land Appeal, United States Department of the Interior, where it was again affirmed unanimously.

Next came the action presently before us, on appeal from the District Court of Arizona. From cross-motions for a summary judgment entered in favor of the government, appellant brings this appeal, asserting there are five issues, which he lists as follows:

4. Chrisman v. Miller, 197 U.S. 313, 25 S.Ct. 468, 49 L.Ed. 770 (1905); Best v. Humboldt Placer Mining Co., 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963); United States v. Coleman, 390 U.S. 599, 602, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968).

5. Barrows v. Hickel, 447 F.2d 80, 82 (9th Cir. 1971).

6. Foster v. Seaton, 106 U.S.App.D.C. 253, 271 F.2d 836, 838 (1959); United States v. Coleman, supra, 390 U.S. at 600, 88 S.Ct. 1327.

7. United States v. Coleman, *supra*, 390 U.S. at 602, 88 S.Ct. 1327; Converse v. Udall, 399 F.2d 616 (9th Cir. 1968).

**Issue I**

Whether there is "substantial evidence" in the administrative record to support the Secretary's finding of no valuable mineral deposit on the "Robe Roy" claim.

**Issue II**

Whether the Secretary's economic consideration, that is, the "marketability test," of the claim in question has been applied as a complement to the "prudent man test" or as a crucial independent test of mineral discovery.

**Issue III**

Whether there exists in the administrative record substantial evidence that Appellant has made a valid discovery of mineral on the "Robe Roy" claim under the letter and intent of the mining laws.

**Issue IV**

Whether Multiple Use, Inc. is entitled to the total 103.18 acres applied for in patent application.

**Issue V**

Whether the patent applicant has established right to patent under 30 U.S.C., Section 38.

We answer the first issue "yes"; the second, that the "marketability test" is complementary to the "prudent man test" and was properly applied; [7] to the third issue, "no"; that the fourth issue is immaterial and moot; and to the fifth issue, "no". [8]

8. No cases are cited by appellant in support of this issue. His conclusion assumes that appellant has "held and worked" his claim for a sufficient period of time. The statute's words, "'have held and worked their claims,' presupposes a discovery." The necessity of a discovery to sustain a mining location is not dispensed with, nor may its absence be cured by virtue of the provisions of this section. Cole v. Ralph, 252 U.S. 286 at 307, 40 S.Ct. 321, 330, 64 L.Ed. 567 (1920).

We look first to the question of jurisdiction. The defendant Secretary's jurisdiction existed in the district court under 28 U.S.C. § 1361 (interpreting the complaint as one seeking mandamus) and under the Administrative Procedure Act. Appellant-plaintiff asserts the district court had jurisdiction under the Administrative Procedure Act. The court below carefully reviewed the authorities (C.T. p. 122 to p. 125, inclusive), and then made his findings and conclusions in an able opinion. (See Multiple Use, Inc. v. Morton, 353 F. Supp. 184, 187–188) (1972).

We have jurisdiction on appeal under 5 U.S.C. § 704, formerly 5 U.S.C. § 1009(c).

■ The scope of the review permitted both to the district court and to our Court, is extremely limited. The district court and this Court are entitled only to determine if the Secretary's decision is arbitrary or capricious or unsupportable by substantial evidence, considering the record as a whole. Sanford v. United States, 399 F.2d 693, 694 (9th Cir. 1968).

In considering the questions of whether the Secretary's decision is supported by the evidence as a whole, we must keep in mind this is not a trial *de novo,* but a consideration of what evidence was before the district judge, and what evidence he relied upon in making his decision. The courts may not substitute their judgment for that of the administrative agency's expertise in the field. Port of New York Authority v. Federal Maritime Commission, 429 F.2d 663, 666 (5th Cir. 1970), cert. denied 401 U.S. 909, 91 S.Ct. 867, 27 L.Ed.2d 806 (1971).

Thus, a bald conclusion by the trial judge (that sufficient evidence does or does not exist to support the Secretary's decision that there had or had not been a sufficient discovery) is of no aid to this Court in making its own decision that such sufficient evidence exists, and that the district judge relied upon it. *Cf.* Nickol v. United States, et al., No. 74–1011, Tenth Circuit, decided June 18, 1974, 501 F.2d 1389.

There is no such lack in the record before us in this case. Here we have a careful history of the claims and what was done on them, a well reasoned opinion, and specific findings of fact and conclusions of law, all of which, with its footnotes, covers some 18 pages in the record.

■ The court was required in coming to its conclusions, to rely only on the administrative record before it. In discussing these matters, the district court properly held, with citation of appropriate cases, that the expertise of the Department of the Interior must be looked upon with respect and considered with care.

After reciting the rules applicable, the district court held: "In view of our decision with respect to the issue of discovery, as discussed below, we find it unnecessary to reach the contingent issue as to the number of acres to which plaintiff may be entitled," by its claims. (353 F.Supp. 189). We agree.

In our opinion, after a careful study of all the evidence and the cases cited, including those principally relied upon by appellant, the trial court's findings and conclusions as recited in its "Opinion and Order" are correct; are supported by substantial evidence; and, in truth, could not be improved upon by this Court. Multiple Use, Inc. v. Morton, 353 F.Supp. 184, 189 to 195, inclusive. (D.Ariz.1972).

We therefore adopt such portion of said opinion, by reference, as our own. The district court's decision affirming the decision of the Secretary of the Interior is

Affirmed.